FENG LI, Esq,
1719 Route 10 East, Suite 11
Parsippany, NJ 07054
(973) 590-5110, (973) 454-9027
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ALFRED T. PENG and DIANA PENG

       Plaintiffs,

         vs.                       CIVIL ACTION NO:  05-cv-03939-JAG

David L. Gabay
Pinnacle Planning Group
John Does # 1-10, General Agents
John Does # 11-20, Broker Dealers
Keyport Life Insurance/Sun Life Insurance
Lincoln Financial Group
Mainstay Funds/New York Life Trust
Mutual Service Corporation
Royal Alliance Associates Inc.
The Best of America
First Sun America Life Insurance Company
Pershing, Bank of New York (clearing house)

       Defendants.

_____

## BRIEF IN OPPOSITION OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND MAINSTAY FUNDS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

TABLE OF CONTENTS

Table of Authorities……………………………………………………………………….3

I.      Introduction……………….……………………………………………………….5

II.     Procedural History and Statement of Facts......…………………………………..6

III. Argument…………………………………………………………………....……….8

   a.   Standard of Review……………………………………………...........…………..8

   b.   Even Defendants, New York Life Insurance Company and Mainstay Funds, did
not deal with Plaintiff directly, Defendants are liable for the products that sold to
Plaintiffs based on  Principal-agent relationship …………………………….……...............9

   c.  Cause of Actions Related to State and Common Laws Against Defendants New
York Life Insurance Company and Mainstay Funds Are Not Barred by Statute of
Limitation  Because  the  actions  were  discovered  in  late  of
2004.…………………………………….............................................................................13

   d. There is clearly a contractual relationship between Plaintiffs and Defendants,  New
York Life Insurance Company and Mainstay Funds ………………………………  …..19

   e. The argument from Defendants to dismiss Plaintiffs' complaint is unsupported
under Rule 12(b)(6)...........................................................................................................20

IV.     Conclusion………………………………………………………………………21

## TABLE OF AUTHORITIES

**Cases:**

Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997)………………………..…8

Ballon v. General Electric Co., (1st Cir. 1968) 393 F.2d 398. .......................................19

Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3rd Cir.1986)............................................8

Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir.1992)…8

Fisher v. Aetna Life Insurance & Annuity Co., 39 F.Supp.2d 508 (M.D.Pa.1998), aff'd
176 F.3d 472 (3rd Cir.1999)………………………………………………..................10

Galligan v. Westfield Ctr. Serv., Inc., 82 N.J. 188, 192, 412 A.2d 122, 124 (1980)........16

General Stencils, Inc. v. Chiappa 18 N.Y.2d 125...............................................................13

In re Cybershop.com Sec. Litig., 189 F.Supp.2d 214, 223-24 (D.N.J.2002)....................9

In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir.2002) ("NAHC")..................9

Knaysi v. A.H. Robins, 679 F.2d 1366 (11th Cir. 1982)...................................................14

Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973)..........................................................15

Luber v. Underwriters at Lloyd's, 1992 WL 346467 (E.D.Pa.1992).................................10

Michaels v. New Jersey, 955 F. Supp. 315 ......................................................................18

National Premium Budget Plan Corp. v. National Fire Insurance Co. of Hartford, 97 N.J.Super. 149, 234 A.2d 683................................................................................................9

Negron v. Llarena, 156 N.J. 296, 300, 716 A.2d 1158, 1160 (1998)..........................15, 17

O'Keeffe v. Snyder, 83 N.J. 478, 416 A.2d 862 (1980).............................................15

Peloso v. Hartford Fire Ins. Co., 56 N.J. 514, 521, 267 A.2d 498, 501 (1970)................16

Price v. New Jersey Manufacturers Insurance Company, 182 N.J. 519 (2005)................17

Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988)…………………………….....8

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)….....8

Simcuski v. Saeli, 44 N.Y.2d 442.....................................................................................13

Taylor v. Crowe, 282 A.2d 682, 684 (1971)……………………………………………10

Vispisiano v. Ashland Chemical Ca, 107 N.J. 416, 426, 527 A.2d 66 (1987).................18

W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp., 116 N.J. 543, 563, 562 A.2d 222, 232 (1989) ...............................................................................................................15

**Statutes:**

Rule 10b…………………………………………………………………………… .....5

Fed. R. Civ. P. 12(b)(6)....................................................................................................8

New Jersey Statute Ann §2A:14-1...................................................................................16

## INTRODUCTION

This action has been brought by the Plaintiffs to directly address the acts of the Defendants where they:

(a)     Committed violations under §10b of the Securities Exchange Act of 1934 and common-law fraud through unsuitable trading, unauthorized trading and excessive trading or churning of Plaintiff's securities account.

(b)     Defendants beached fiduciary duties owed to Plaintiffs by not exercising professional judgment and not following security guidelines.

( c)     Defendants negligently or intentionally misrepresented information regarding Plaintiffs' investments and fraudulently concealed a known fact that Plaintiffs' insurance policies would lapse for missing payments.   Plaintiffs' detrimental reliance on Defendants misrepresentations resulted in loss of premiums paid and loss of insurance coverage.

(d)     Defendants breached the agreement to jointly service the Contract with Plaintiffs for the purchase of life insurance policies and investments in addition to breaching an implied covenant of good faith and fair dealing with Plaintiffs.

In addition to the above-referenced violations of law, Defendants have committed other state law violations related to the Plaintiffs' financial investments which have also given rise to this litigation.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

This litigation was initiated on August 8, 2005 with a Complaint filed in the United State District Court for the District of New Jersey, under Docket 05-cv-03939-JAG. Plaintiffs filed an Amended Complaint on September 6, 2005.

Pursuant to the allegations of Plaintiffs' First Amended Complaint, Plaintiffs began to use Defendant David Gabay as their financial advisor in 1989 as Plaintiffs had no knowledge of insurance and financial investments. See First Amended Complaint at ¶¶ 16,18. During the tenure of Defendant Gabay's management of Plaintiffs' financial investments, Defendant Gabay changed Plaintiffs' investments with excessive frequency including, among other financial products, Defendants New York Life Insurance Company and Mainstay Funds. *Id.* at ¶ 20.

In the latter part of the 1990's, Defendant Gabay began investing Plaintiffs' funds heavily in annuities with a promise of a 10% rate of return. This pattern of investment continued until the market downturn of the early 2000's. *Id.* at ¶ 21.

By 1998, Defendant Gabay was managing a total of $148,085.00 for Plaintiff Diana Peng. *Id.* at ¶ 24. During Plaintiffs' period of investment with Defendant Gabay, Defendant Gabay made frequent changes from one investment to another which frequently resulted in surrender fees. *Id.* at ¶ 25. By October 2004, Plaintiff Diana Peng was left with only $138,220.70 which was clearly a loss to Plaintiff and a breach of the promise to deliver a 10% rate of return on Plaintiffs' annuity investments. *Id.* at ¶ 26.

During Plaintiffs' period of investment with Defendant Gabay, Defendant Gabay also sold Plaintiff Alfred Peng a $250,000 life insurance policy having a premium of $750 per quarter and a $1,000,000 policy with a $4,250 premium per quarter. *Id.* at ¶¶

27-28.  In 1992, Defendant Gabay also sold to Plaintiff Alfred Peng two $500,000 life insurance policies with a premiums of $12,000 each per year.  *Id.* at ¶¶ 29-30.

The life insurance policies sold be Defendant Gabay resulted in yearly premium payments of $33,000 per year equating to roughly 28% of Plaintiffs' pretax income.  *Id.* at ¶ 31.  Defendant was aware of Plaintiffs' yearly income of $120,000 and repeatedly assured Plaintiffs that their family was "well protected".  *Id.* at ¶¶31-32.

During 1998, Plaintiff Alfred Peng phoned and met with Defendant Gabay regarding concerns of his inability to afford the yearly premiums required to maintain the life insurance policies procured by Defendant Gabay.  *Id.* at ¶ 35.  Defendant Gabay repeatedly assured Plaintiffs that they should not worry about this situation and he would take care of things.  *Id.* at ¶ 36.

In the summer of 2004, Plaintiffs hired Pai-Su Kang as their financial advisor. *Id.* at ¶ 37.  Kang discovered at that time that the $1,000,000 life insurance policy managed by Defendant Gabay had lapsed in 2002.  *Id.* at ¶ 38.  It was also determined that the remaining insurance policies were either at no cash value or were close to lapsing.  *Id.* at ¶ 38.  Plaintiffs were never notified by Defendant Gabay about the status of these insurance policies.  *Id.* at ¶ 40.

It is the First Amended Complaint which is the subject of the Defendants,  New York Life Insurance Company and Mainstay Funds' Motion to Dismiss currently before this Court pursuant to FRCP 12(b)(6).

# ARGUMENT

### a. Standard of Review

A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir.1992). The question, then, is whether "the facts alleged in the complaint, even if true, fail to support the ⋯ claim." *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

A motion to dismiss under Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3rd Cir.1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir.1997).

As a general matter, courts ruling on a motion to dismiss may not consider matters extraneous to the complaint. *Burlington Coat*, 114 F.3d at 1426 (citation omitted). However, an exception to the general rule is that a " 'document integral to or explicitly relied upon in the complaint' " may be considered " 'without converting the motion [to dismiss] into one for summary judgment. " *Id.* (emphasis omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996); citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993) ("a court may consider an

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")). The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint-lack of notice to the plaintiff-has dissipated where plaintiff has actual notice and has relied upon the documents in framing the complaint. *See Id.*. For the same reason, courts may consider matters of public record that are relied upon or cited in the complaint. *In re Cybershop.com Sec. Litig.*, 189 F.Supp.2d 214, 223-24 (D.N.J.2002). Relevant to this action, the Court also may consider SEC filings, even if those filings are not relied on in the complaint. See *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir.2002) ("NAHC").

**b. Even Defendants, New York Life Insurance Company and Mainstay Funds, did not deal with Plaintiff directly, Defendants are liable for the products that sold to Plaintiffs based on  Principal-agent relationship**

Defendants, New York Life Insurance Company and Mainstay Funds, asserts that they cannot be held liable for the misrepresentations and non-disclosures allegedly made by the agents who sold the plaintiffs their annuity policies because those sale people were acting as the agents of Defendants, Royal Alliance Associates, Inc. and Mutual Service Corporation, not Defendants,  New York Life Insurance Company and Mainstay Funds' company.

 Although the question of whether a principal-agent relationship exists is ordinarily one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the

question is one which may be properly decided by the court. *National Premium Budget Plan Corp. v. National Fire Insurance Co. of Hartford*, 97 N.J.Super. 149, 234 A.2d 683, 708 (Law Div.1967), aff'd,106 N.J.Super. 238, 254 A.2d 819 (App.Div.1969). Generally, an insurance agent is employed by an insurance company and represents the insurer's interests. An insurance broker, on the other hand, is not employed by any specific insurance company and acts as a middle man between the insured and the insurance company soliciting the public and then placing the requested insurance with a company. Roach, Inc. v. Ping Park, 39 N.J. Super. 336, 339.

An insurance broker, of course, may be an agent for both the insured and the insurer. *Luber v. Underwriters at Lloyd's*, 1992 WL 346467 (E.D.Pa.1992) at 3.

Thus, the agency status of a broker depends on the relationship between the broker and the insured as well as that between the broker and the insurer. *Fisher v. Aetna Life Insurance & Annuity Co.*, 39 F.Supp.2d 508 (M.D.Pa.1998), aff'd176 F.3d 472 (3rd Cir.1999). For a broker to be found to be an agent of the insurer, there must be some evidence of an authorization, or some fact from which a fair inference of an authorization by the company to the broker might be deduced. *Taylor v. Crowe*, 282 A.2d 682, 684.

Applying these principles to this action, there exists an agreement or contract between the insurers (New York Life Insurance Company and Mainstay Funds) and intermediary (Defendant, Royal Alliance Associates, Inc., Mutual Service Corporation, and David Gabay). See Exhibit "A" of DECLARATION OF MARK NEWHART IN SUPPORT OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND MAINSTAY FUNDS' FED. R. CIV. P.12(b) (6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT. Based on this contract, Defendants,  Royal Alliance Associates, Inc.,

Mutual Service Corporation, and David Gabay, are agents of Defendants,  New York Life Insurance Company and Mainstay Funds. Defendants, Royal Alliance Associates, Inc., Mutual Service Corporation, and David Gabay, acted within the scope of agent relationship with Defendants,  New York Life Insurance Company and Mainstay Funds, namely sell Defendants, New York Life Insurance Company and Mainstay Funds' products to Plaintiffs.    Therefore, David Gabay did function as dual agents of Plaintiffs and Defendants, New York Life Insurance Company and Mainstay Funds.

While these facts certainly suggest that these sales people, Defendants, Royal Alliance Associates, Inc., Mutual Service Corporation, and David Gabay were the agents of the individual Plaintiffs and Defendants, New York Life Insurance Company and Mainstay Funds. There is also ample evidence that Plaintiffs believed that Defendants, New York Life Insurance Company and Mainstay Funds held these sales agents out as having the authority to speak for and represent the company and that it made and treated those people who sold its products of  Defendants, New York Life Insurance Company and Mainstay Funds. In addition, these same agents were identified on the periodic account statements and summaries which Plaintiffs received from the Defendants' company as New York Life Insurance Company and Mainstay Funds' representatives. Since it is believed that a jury could find from this evidence that the plaintiffs were justified and reasonable in their beliefs that the sales agents from whom they purchased their annuities were in fact representatives and agents of Defendants, New York Life Insurance Company and Mainstay Funds, the Court must decline to grant the dismiss judgment in Defendant's favor on the basis of this argument.

In defendants' motion, Mark Newhart in his Declaration admitted that Defendant, David Gabay opened a MainStay Convertible Fund account for Plaintiff Alfred Peng on February 28, 1997. The actual fund's name is "Convertible Fund Class B" from Defendants' Website. **See Exhibit #1 attached here**.

For this kind of account, the product owners, such as Defendants, New York Life Insurance Company and Mainstay Funds have the obligations to prevent unsuitable and unnecessary transaction to the prospective clients, like Plaintiff, Mr. Alfred Peng here. "Convertible Fund Class B" is different from other funds. The important feature of this fund is that the client shall not pay any fees when he/she open an account at the beginning. However, this client has to stay with the Defendants at least for 5 to 6 years. If the client would leave this fund before the 5 or 6 years, he/she would be punished by a surrender fee. In this case, Defendants New York Life Insurance Company and Mainstay Funds charges the surrender fee of 5.00% from **Exhibit#1.**

In paragraph 13, of Declaration of Mark Newhart, "The MainStay Account, closed out in 1998, had a closing balance of $219,809.69."

There are certain obligations for a company to issue an "convertible fund class B" as in the certification by Ms. Kang. First, Defendant shall prevent agent like Defendant, David Gabay, churning account of Plaintiffs. Defendant shall inquire whether the transaction was solicited or unsolicited and what type of products are the funds being transferred from. Defendants needed to ask reasons why the Defendant, David Gabay, wanted to transfer the fund to this "Convertible Fund Class B".

From the Certification of Ms. Pai-Su Kang, it is obvious that Defendants could be liable to Plaintiff here.

Therefore, based on the standard of *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3rd Cir.1986), accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the motion by Defendants New York Life Insurance Company and Mainstay Funds,  to dismiss under Rule 12(b)(6) shall not be granted since Plaintiff provided enough evidences that prove Defendants New York Life Insurance Company and Mainstay Funds, could  be liable to Plaintiffs .

**c.  Cause of Actions Related to State and Common Laws Against Defendants New York Life Insurance Company and Mainstay Funds Are Not Barred by Statute of Limitation Because the actions were discovered in late of 2004**

The doctrine of equitable estoppel is applicable here, under either of New York or New Jersey law, and precludes dismissal of Plaintiff's complaint under the statutes of limitation involved.

The New York Court of Appeals has stated that "Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing.......which produced the long delay" in bring suit. *General Stencils, Inc. v. Chiappa* 18 N.Y.2d 125, 128.

If there is a fiduciary or other special relationship between the parties, Defendants are estopped from raising the statute of limitations as a defense because Defendants fraudulently concealed their information to Plaintiffs. In *Simcuski v. Saeli*, 44 N.Y.2d

442, the defendant was the plaintiff's physician. The doctor damaged a nerve in the plaintiff's neck while performing an operation. When the plaintiff lost sensation in her right side and brought this to the doctor's attention, he assured her that it was only temporary and would correct itself in time. Relying on this advice, the plaintiff refrained from seeking other help, although timely attention, as she later learned, could have corrected or cured her condition, which became permanent. The doctor's representations had the direct effect of getting the plaintiff to forego suit and on these facts (as pleaded) the plaintiff could reasonably rely on the representations. Thus, in a concealment situation brought after the expiration of the applicable period, enough was spelled out to work an estoppel against the doctor and prevent him from invoking the time bar.

Here, striking similarity to the case of *Simcuski,* Plaintiffs brought Defendant, David Gabay's attention that they worried about their ability to pay these premium, David Gabay assured them that he would take care of everything and let Plaintiffs not worry. Relying on this advice, Plaintiffs refrained from seeking other help, although timely attention, as they later learned, could have saved their insurances and investments. Defendant, David Gabay's representations had the direct effect of getting the Plaintiff to forego suit and on these facts (as pleaded) Plaintiff could reasonably rely on the representations. Thus, the defense of the statute of limitation shall not be avail to Defendants for the same reasons.

One who wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of the suit cannot avail himself of the statute of limitations as a defense.

In the case of *Knaysi v. A.H. Robins*, 679 F.2d 1366 (11th Cir. 1982), the court said:

Where it does not conclusively appear that the plaintiffs had knowledge of facts of that nature of complaint should not be dismissed on motion.

The Eleventh Circuit held that Knaysi had adequately pleaded facts which, if proved, could constitute an equitable estoppel to raising the statute of limitations as a defense. The New York Court of Appeals has adopted this approach as well. The Court recognized that obvious questions of fact are present, particularly with regard to defendant's misrepresentation. In such cases, the Court said, motions to dismiss are inappropriate and plaintiffs should be allowed to litigate the estoppel issue.

"The primary purpose of the statute of limitations is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims." *W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp.*, 116 N.J. 543, 563, 562 A.2d 222, 232 (1989) (citing Ochs v. Fed. Ins. Co., 90 N.J. 108, 112, 447 A.2d 163, 165 (1982); O'Keeffe v. Snyder, 83 N.J. 478, 490-91, 416 A.2d 862, 868-69 (1980)). Consistent with that purpose, "where defendants are on notice of the claims, and no significant prejudice results, the policy reasons for upholding a strict statute of limitations recede." Ibid.

To avoid harsh results from a mechanical application of the statute of limitations, this Court has applied equitable principles to conclude that the statute should yield to other considerations. We noted in *Negron v. Llarena*, 156 N.J. 296, 300, 716 A.2d 1158, 1160 (1998), that "[p]rocedural statutes of limitations are not applied strictly. Flexible applications of procedural statutes of limitations may be based on equitable principles, such as the discovery rule, e.g., *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973), or estoppel, e.g., *O'Keeffe v. Snyder*, 83 N.J. 478, 416 A.2d 862 (1980)."

In short, under varying circumstances Courts have recognized that tolling of the statute of limitations is the fair and responsible result, because the "[u]nswerving 'mechanistic' application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing [the] legislative purposes." *Galligan v. Westfield Ctr. Serv., Inc.*, 82 N.J. 188, 192, 412 A.2d 122, 124 (1980). See also *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 521, 267 A.2d 498, 501 (1970) (holding fair resolution of statutory incongruity is to toll period of limitation from time insured gives notice until liability is formally declined by insurer).

Under the these rules, therefore, it is sufficient for Plaintiffs to properly allege facts which, if proved, would constitute an equitable estoppel. Once properly alleged, the issue of equitable estoppel is to be tested through the trial process.

The issues of fraud and misrepresentation would be ultimately submitted to a jury, and if found valid, would sustain Plaintiffs' claim not only as to limitations, but on the merits as well.

The case at bar would invoke equitable. Plaintiffs in this case actively advanced the cause of actions, such as Fraudulent Concealment, Common Law Fraud and Deceit, breach of fiduciary duty, and Estoppel for agent's misrepresentation in support of the application of the doctrine of equitable estoppel. The cause of actions advanced by plaintiff clearly exceeded the requirements for a showing of entitlement to the doctrine of equitable estopel of the Statute of limitation. Defendant, on the other hand, submitted no such arguments, exhibits, or evidence at any point.

Plaintiffs have properly included fraud and misrepresentation in their pleadings. They have asserted that the existence of these elements should estop Defendants New York

Life Insurance Company and Mainstay Funds from resorting to a statute of limitations defense. Since the elements of Plaintiffs' cause of actions have been properly alleged, the Court has no discretion in determining that the doctrine of equitable estoppel should not apply. Under this doctrine, the dismissal of Plaintiffs' case because of untimeliness is inappropriate, and Plaintiffs should be permitted to present their case on estoppel to the trial court.

A recent decision issued by the New Jersey Supreme Court addresses the running of the statute, *Price v. New Jersey Manufacturers Insurance Company,* 182 N.J. 519 (2005). In that case, Insured brought action against automobile insurer to recover uninsured motorist (UM) benefits after expiration of the statute of limitations. The Supreme Court of New Jersey held that the insurer's handling of the claim supported an equitable tolling of statute of limitations.

In reaching its decision, the New Jersey Supreme Court relied upon *Negron v. Llarena*, 156 N.J. 296, 300 (1998), which reached the logical conclusion that:

It is manifestly unjust for the statute of limitations to begin to run if it could be avoided the harsh results from a mechanical application of the statute of limitation.

Furthermore, the Court in *Negron* stated that "procedural statutes of limitations are not applied strictly. Flexible applications of procedural statutes of limitations may be based on equitable principles, such as the discovery rule."

Defendants, New York Life Insurance Company and Mainstay Funds  contends that the statute of limitations concerning fraud and breach of contract, negligent, misrepresentation, fraud, deceit and breach of fiduciary duty have run. In determining the statute of limitations for these causes of actions, Defendants are correct in relying on NJ.

Stat, Ann § 2A:14-1. This statute requires suit to be commenced within six years after the accrual of such cause of action. Since the insurance policy in issue went into effect in December of 1997, the statute of limitation would have run by December of 1998. We assume that Defendants' present argument is that the statute of limitations would have run by December of 1998. Defendants' position fails to consider the subsequent conducts induced by David Gabay's continuing false representations. Setting aside these considerations for the sake of argument Defendants' misrepresentations were not made known or knowable until  actually discovery by another expert in the late of 2004.

If equity dictates, however, New Jersey will apply the "discovery rule," which will delay the accrual of a cause of action until the injured party discovers, or by the exercise of reasonable diligence should discover, that the elements of a claim exist" *Michaels v. New Jersey*, 955 F. Supp. 315 (citing *Vispisiano v. Ashland Chemical Ca*, 107 N.J. 416, 426, 527 A.2d 66 (1987). This is the very such situation which prompted the creation of the "discovery rule" Plaintiff could not have reasonably known of the fraud perpetrated by Defendants until such an event as Plaintiffs' new expert found out the lost of annuities. Because there would be no reason for Plaintiffs to believe that Defendant, David Gabay, who is very much possible an agent for Defendants, New York Life Insurance Company and Mainstay Funds kept telling Plaintiffs "do not worry, I will take care of everything" until such a fraud was discovered.

**Defendants' contention that Plaintiffs should discover the general fraudulent scheme in 1998 is unfounded**. The only reason that Plaintiffs used Defendant, David Gabay as their financial planner or adviser was because Plaintiffs have no knowledge about investment and annuities. Plaintiffs were totally relying on the advise of

Defendant, David Gabay. In 1998, Plaintiffs worried about their ability to pay these premiums. And every time, they asked Defendant David Gabay, David Gabay told them "Do not worry, I will take care of everything". How could Plaintiffs discover any fraud that David Gabay committed under these circumstances? There are completely no factual or logical support that Plaintiffs could discover the fraud or other activities that Defendants, David Gabay and /or other Defendants committed.

**d. There is clearly a contractual relationship between Plaintiffs and Defendants, New York Life Insurance Company and Mainstay Funds**

It is clearly shown by Defendants, New York Life Insurance Company and Mainstay Funds that there is contractual relationship between Plaintiffs and Defendants, New York Life Insurance Company and Mainstay Funds. Exhibit "B" of Mark Newhart of Declaration shows that Plaintiff, Alfred Peng has signed MainStay Distribution Forms. Exhibit "C" of Mark Newhart's Declaration shows that Plaintiff had the MainStay Convertible Fund B.

Even Defendants claimed that they have an agreement with Defendant, Royal Alliance Associates, Inc. or Defendant, Mutual Service Corporation as shown in Exhibit "A". But the contract for the annuity was between Plaintiffs and Defendants, New York Life Insurance Company and Mainstay Funds.

At this stage, it is not clear how and why the contract was breached by Defendants, New York Life Insurance Company and Mainstay Funds because at this early stage of

litigation, lack of enough evidence and the contact from Defendants are almost illegible. But at least, there should be "good faith and fair dealing" for the contract between Defendants, New York Life Insurance Company and Mainstay Funds and Plaintiffs. At this stage, it appears that Defendants, New York Life Insurance Company and Mainstay Funds did not properly taking care its customers, Plaintiffs here. They let Defendant, David Gabay, churn Plaintiffs' account, and charge huge amount of service fees from Plaintiffs' accounts. Defendants, New York Life Insurance Company and Mainstay Funds also benefitted from Defendant, David Gabay's illegal conducts by charging almost 5% of $219,809.69 as surcharge and other service fees from Plaintiffs' account. Therefore, they might be liable for breach the contract and acted without "good faith and fair dealing".

**e. The argument from Defendants to dismiss Plaintiffs' complaint is unsupported under Rule 12(b)(6)**

Defendants moved to dismiss on the pleadings. The argument to dismiss is absolutely unsupportable under Rule 12.

Under this rule, a defendant may make a motion to dismiss for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). In addition, the Rules provide that such a motion to dismiss shall be treated as one for summary judgment and disposed of as provided in Rule 56. Additionally, all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Fed. R. Civ. P. 12(b). A complaint should not be dismissed for insufficiency unless it appears to a certainty that

plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Ballon v. General Electric Co.*, (1st Cir. 1968) 393 F.2d 398.

Fed. R. Civ. P. 12(b)(6) is not applicable in this case, as plaintiff had clearly stated claims in the complaint upon which relief may be granted. Defendant's motion to dismiss is based upon the theory that any cause of action plaintiff may have possessed is barred by the statute of limitations pursuant to NJ. Stat, Ann § 2A:14-1. The interpretations of the statute of limitations in this case, however, involve critical questions of material fact which should be passed upon by the trial court. The decision to dismiss was made prematurely, without regard to material facts.

Here, Plaintiffs not only filed this action against Defendants, New York Life Insurance Company and Mainstay Funds, who had clearly relationship with Defendant, David Gabay, based on churning account or based on § 10(b) of the Exchange Act, and Rule 10b-5, but also based on common laws or state laws that require Defendants, New York Life Insurance Company and Mainstay Funds, to fulfill their duty to their clients, like Plaintiffs here. Defendants, New York Life Insurance Company and Mainstay Funds, have dual duties to protect their prospective customers, like Plaintiffs here. First, Defendants had a obligation to prevent, agent or brokers like Defendant, David Gabay, churning account of Plaintiffs. Second, Defendants had a obligation to make sure that the investment from Plaintiffs was suitable for their goal. Clearly, Defendants, New York Life Insurance Company and Mainstay Funds, breached their duty to Plaintiffs and let Defendant David Gabay churned Plaintiffs' account and the investment was totally unsuitable for Plaintiffs.

**IV  CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request  Defendants, New York Life Insurance Company and Mainstay Funds' Motion to Dismiss be denied.


Dated:  December 18, 2005                          By: s//Feng Li

                                                    Feng Li, Esq.

                                                    Attorney for Plaintiffs

# EXHIBIT #1

**Convertible Fund**

## Fees and Expenses of the Fund

The table below describes the fees and expenses that you may pay if you buy and hold shares of the Fund.

| **Shareholder Fees** (fees paid directly from your investment) | Class A | Class B | Class C |
|---|---|---|---|
| Maximum Sales Charge (Load) Imposed on Purchases *(as a percentage of offering price)* | 5.50% | None | None |
| Maximum Deferred Sales Charge (Load)[1] *(as a percentage of the lesser of the original offering price or redemption proceeds)* | None | 5.00% | 1.00% |
| Exchange Fee | * | * | * |
| Maximum Account Fee | None | None | None |
| **Annual Fund Operating Expenses** (expenses that are deducted from Fund assets) | | | |
| Management Fees[2] | 0.71% | 0.71% | 0.71% |
| Distribution and/or Service (12b-1) Fees[3] | 0.25% | 1.00% | 1.00% |
| Other Expenses | 0.39% | 0.39% | 0.39% |
| Total Annual Fund Operating Expenses[2] | 1.35% | 2.10% | 2.10% |

\* Except for systematic exchanges, exchanges processed via MainStay's automated system or website, and as to certain accounts for which tracking data is not available, after five exchanges per calendar year, a $10 processing fee may be imposed per exchange.

1 Generally, Class A shares of the Fund are not subject to a contingent deferred sales charge upon redemption. A contingent deferred sales charge of 1.00% may be imposed on certain redemptions effected within one year of the date of purchase of Class A shares that were purchased at net asset value. The amount of the contingent deferred sales charge which may be applicable to Class B shares will depend on the number of years since you purchased the shares being redeemed. A contingent deferred sales charge of 1.00% may be imposed on redemptions of Class C shares within one year of the date of purchase.

2 The management fee for the Fund is an annual percentage of the Fund's average daily assets as follows: 0.72% up to $500 million, 0.67% from $500 million to $1 billion and 0.62% in excess of $1 billion. NYLIM has voluntarily agreed to waive its management fee of 0.67% on assets up to $500 million, 0.62% on assets from $500 million to $1 billion and 0.57% on assets in excess of $1 billion and to voluntarily waive other fees and/or reimburse the Fund for certain expenses so that total annual fund operating expenses do not exceed 1.20% of average daily net assets for Class A shares. An equivalent reduction will apply to the Class B and C shares of the Fund. If NYLIM's voluntary waivers and/or reimbursements had been in effect for the fiscal period ended October 31, 2004, total annual fund operating expenses would have been 1.20% for Class A shares and 1.95% for Class B and C shares. These waivers and/or reimbursements may be discontinued at any time without notice.

3 Because the 12b-1 fee is an ongoing fee charged against the assets of the Fund, long-term shareholders may indirectly pay an amount that is more than the economic equivalent of paying other types of sales charges.

## Example

The Example is intended to help you compare the cost of investing in the Fund with the cost of investing in other mutual funds. The Example assumes that you invest $10,000 in the Fund for the time periods indicated and reflects what you would pay if you redeemed all your shares at the end of each time period shown or if you continued to hold them. The Example also assumes that your investment has a 5% return each year, that the Fund's operating expenses remain the same and that all dividends and distributions are reinvested. There is no sales charge (load) on reinvested dividends. Your actual costs may be higher or lower than those shown.

| | Class A | Class B | | Class C | |
|---|---|---|---|---|---|
| Expenses after | | Assuming no redemption | Assuming redemption at the end of each period | Assuming no redemption | Assuming redemption at the end of each period |
| 1 Year | $ 680 | $ 213 | $ 713 | $ 213 | $ 313 |
| 3 Years | $ 954 | $ 658 | $ 958 | $ 658 | $ 658 |
| 5 Years | $1,249 | $1,129 | $1,329 | $1,129 | $1,129 |
| 10 Years | $2,085 | $2,240 | $2,240 | $2,431 | $2,431 |

FENG LI                                        (Copyright 2005, Form#Fin203, Kenneth Ellman)
Attorney for Plaintiffs
1719 Route 10 East
Suite 111
Parsippany, New Jersey  07054

-----------------------------------------------------

ALFRED T. PENG AND DIANA PENG                    UNITED STATES DISTRICT COURT
                            Plaintiffs           DISTRICT OF NEW JERSEY
                                                 CIVIL ACTION #05-cv-3939 (JAG)

vs.                                              Hon.  Joseph A Greenaway, Jr.
                                                 U.S.D.J.
David L. Gabay, Pinnacle Planning Group,
John Does, et. al.
                            Defendants           **Certification of Pai-Su Kang To**
                                                 **Support Plaintiffs against Defendants' New**
                                                 **York Life Insurance Company and**
                                                 **Mainstay Funds Motion Based 12 (b) (6)**

--------------------------------------------------------

PAI-SU KANG, UPON CERTIFICATION HEREBY STATES:

**Identification of Affiant and Purpose of  Certification**

1. I am a Vice President at National Legacy Group, a financial planning and services organization

(www.yourfinancialadvisors.com)  and a Certified Financial Planner. I am thoroughly familiar with

all of the facts and circumstances in this action.  I am also a licensed Insurance Broker.

2. During the  summer of 2004,  I was hired by the Plaintiffs to determine the status of their Life

Insurance Policies, Investments and other Financial Planning.   I undertook a review of their past

financial records and sought to understand and verify what had occurred in their financial dealings.

3.  I make this Certification to provide the Court with the knowledge I acquired after examination

of the records in this matter and my conclusions regarding the documentation available to me.  I am

not a party to this case and have no interest in the outcome other than to see that justice is done.

Page 1 of  7

**Issues  In this Certification**

**Findings of Affiant**

4. Initially my objective as a Certified Financial Planner was to examine the financial and insurance documents of the Plaintiffs and determine what they own and what rights they have regarding various financial instruments and policies.   This was done.

5.  My findings indicated that the Plaintiffs lost various protections of their  Investments which significantly diminished in value.   The loses suffered by the Plaintiffs were **not** due to market conditions or errors of judgment.   The loses were due to what is known as "churning", a reprehensible and illegal practice where a broker or person exercising authority over an account makes repeated changes in investments to earn additional commissions at the expense of and to the detriment of the account owner.

6.  For example, in this instant case the Plaintiffs at the direction and recommendation of the Defendants and or the representatives of the Defendants,  had purchased from the Defendants an Investment  Vehicle known as "MainStay Convertible Fund B". These are known as loaded funds. So as not to lose a  portions of your investment to sales commissions, a loaded fund must be held for a specific period of time.   Sale in advance of that  time incurres  a penalty.  *However retaining the fund until the sales commission  penalty abates  prevents the salesman form earning more trading commission on the investment..* In this case it is apparent that  the Defendants acted  as an unscrupulous sales operation by churning (selling off the position) of  the account of the Plaintiffs.

7. This can only occur when:

(a) an unscrupulous salesman violates his fiduciary duty to the client; and

(b) management either is involved in the scam or fails to institute protective procedures to detect this type of illegal activity; and

(c) the distributor and or issuer of the financial vehicle fails to screen its sales representative and or sales agents and fails to train them properly; and

(d) when the account holder is trusting of the salesman , naive regarding money and investment matters and ignorant of the danger and injury caused by the salesman.

Ironically, it is the vulnerable persons who turn to investment salesman and advisers and who turn to "name brand" investment vehicles, for their protection, who are then victimized by the very persons who they hoped would protect and guide them.

Unfortunately, all of the above occurred in this case. All the potential safeguards either were not present and or were not functioning or did not exist. Therefore the innocent were harmed through no fault of their own. There is no justification for this injury which is akin to a theft.

**Based on limited information, Defendants, New York Life Insurance Company and Mainstay Funds Have Knowledge about Plaintiff's Account and Injury**

8. It appears that the Plaintiff has not had the opportunity to conduct Discovery and uncover further evidence of wrongdoing by the Defendants. So at the beginning stage of this litigation, I have reviewed the only the material available from Defendants, and certain records provided by New York Life Insurance Company and Mainstay Funds regarding Plaintiffs' account.

9.  From the Exhibit "B" and "C" of Declaration of Mark Newart, it clearly shows that Defendants, New York Life Insurance Company and Mainstay Funds, have complete information regarding Plaintiffs' account with these Defendants.

10. Exhibit "C" of Declaration of Mark Newart, shows one statement of Plaintiffs. It has Plaintiff's social security number, fund's name "MainStay Convertible Fund B", and other detail information of Plaintiff.

11. Exhibit "B" of Declaration of Mark Newart, shows MainStay Distribution Form with Plaintiff's signature even though most of this form is illegible.

12. These two Exhibits only show a small portion of the   account information in possession of Defendant.  However, they are clearly showing that Defendants have a complete data regarding Plaintiff's application to buy Defendants' fund.

13. Therefore, even if Defendants, New York Life Insurance Company and Mainstay Funds, claimed that their product was sold to Plaintiffs by other Defendants, they cannot deny that they maintained the account, administered the trades and advertised their products to the Plaintiffs.  It is the Defendants who sought the Plaintiffs business and it is the Defendants who authorized any and all sales agents to represent the Defendants.

14.  Keeping in mind that these products are sold to naive investors using the prestige of the Defendants, then the Defendants have an obligation to take those steps necessary to protect naive investors from illegal and unscrupulous sales agents and representatives.

15. Defendants were obligated to disclose and warn the Plaintiffs about churning as they clearly have knowledge of this transactions which were committed by their authorized sales agents and by suing the Defendants name.

**Based on limited information, Defendants, New York Life Insurance Company and Mainstay Funds clearly violated their duties owed to Plaintiff**

16. Based on the facts that Defendants, New York Life Insurance Company and Mainstay Funds, have thorough knowledge about Plaintiff and their product was sold to Plaintiff, Defendants have a duty to Plaintiff to protect Plaintiff from overt acts of abuse and harm using the name and investments of Defendants, and to take reasonable precautions to prevent Defendants and authorized salesman from using their Mutual Fund investment vehicle to injure the Plaintiff.

17. Defendants have a reasonable duty to disclose the risks to and to warn the Plaintiffs about any churning of the account by the dealers or brokers. Defendants should maintain a due diligence to question where this money is coming from, whether this transaction is solicited or unsolicited, why the potential client wants this transaction, and disclosing that charges for premature sale of the investment may injure the Plaintiff.

18. In a case like this with naive investors where English is a second language, it is particularly important to require an understanding by the Plaintiff investor. Such understanding can be effectuated by the delivery of a paper to Plaintiffs (and other fund investors) disclosing the manner in which their investment can be "churned" and how to prevent such theft and abuse.

19. Defendant has a reasonable responsibility to determine the suitability of the transaction for a naive investor like Plaintiff by requiring communication with the Investor (Plaintiff) and requiring that there be informed consent to the investment.

20. For a large investment like Plaintiffs of more than $50,000.00, the Defendants should inform Plaintiff of the risks and differences between long term and short term vehicles such as Defendants products known as Convertible fund A and Convertible fund B, simply because Convertible fund B is for a long term investment .

21. Plaintiff would be charged an initial fee for Convertible Fund A. However, the client can transfer his or her fund any time without a penalty.

22. However, for a Convertible Fund B, the client/Plaintiff would not be charged an initial fee, but the client/Plaintiff would be charged a surrender fee up to five percent of his investment if he/she sells the fund early. The normal stay time for Convertible Fund B is about five to six years.

23. Here the limited information provided by Defendants shows that Plaintiff almost invested more than $200,000.00 with Defendants' Convertible Fund B. And it was a short period of stay with Defendants' fund, only about 1 year and six or seven months.

24. Defendant, David Gabay, Mutual Service Corporation and/or Royal Alliance Associates, Inc. all received an undue and illegal enrichment from a naive victim who trusted them and had such trust returned by this theft.

25. It is still not clear how much Defendants, New York Life Insurance Company and Mainstay Funds, charged to Plaintiff for the surrendering fee, although it apparently is 5% maximum.

26. Defendants, New York Life Insurance Company and Mainstay Funds, made profit from Plaintiff's account, particularly the surrender fee of up to 5% of $219,809.69, more than $10,000.00.

27. The only victim here is Plaintiff. Plaintiff, a trusting and naive investor was the victim of a scam and theft, tens of thousand dollars, without even learning of it until it was too late.

28. Defendants, New York Life Insurance Company and Mainstay Funds, did not prevent the churning account by Defendant David Gabay and other Defendants.

29. Defendants, New York Life Insurance Company and Mainstay Funds, did not check the suitability of this investment as Convertible Fund B for Plaintiff.

30. Defendants, New York Life Insurance Company and Mainstay Funds, clearly beached their duties that they owed to Plaintiff.

WHERETOFORE, it is respectfully requested that the Court deny the Defendants' motion to dismiss.

## Certification

I hereby certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

Pai-Su Kang

Dated: 12/15/05