| | |
|---|---|
| ALFRED T. PENG and DIANA PENG,<br><br>*Plaintiffs,*<br><br>vs.<br><br>DAVID L. GABAY, PINNACLE PLANNING GROUP, JOHN DOES #1-10, GENERAL AGENTS JOHN DOES #11-20, BROKER DEALERS KEYPORT LIFE INSURANCE, SUN LIFE INSURANCE LINCOLN FINANCIAL GROUP, MAINSTAY FUNDS, NEW YORK LIFE TRUST MUTUAL SERVICE CORPORATION, ROYAL ALLIANCE ASSOCIATES INC., THE BEST OF AMERICAN, FIRST SUN AMERICAN LIFE INSURANCE COMPANY PERSHING, BANK OF NEW YORK (clearing house).<br><br>*Defendants.* | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Civil Action No. 05-cv-3939 (JAG)<br><br>Hon. Joseph A. Greenaway, Jr.,<br>U.S.D.J. |

---

### REPLY BRIEF IN RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' NEW YORK LIFE INSURANCE COMPANY AND MAINSTAY FUNDS FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS THE ENTIRETY OF PLAINTIFFS' FIRST AMENDED COMPLAINT

---

*Of Counsel and on the brief:*
N. Noelle Letcher, Esq.


Dated: January 17, 2006

**ADORNO & YOSS LLP**
155 Willowbrook Boulevard
Suite 300
Wayne, New Jersey 07470
(973) 256-9000
*Attorney for Defendants,*
*New York Life Insurance Company*
*and MainStay Funds*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

POINT I   COUNTS SEVEN, EIGHT, NINE, TEN, TWELVE AND FIFTEEN OF PLAINTIFFS' COMPLAINT MUST ALL BE DISMISSED AS AGAINST THE MOVING DEFENDANTS BECAUSE THE MOVING DEFENDANTS DID NOT ISSUE A LIFE INSURANCE POLICY TO THE PLAINTIFFS'. ................................................................ 2

POINT II   PLAINTIFFS' ASSERTION THAT AN AGENCY RELATIONSHIP EXISTS BETWEEN GABAY AND THE MOVING DEFENDANTS IS UNSUPPORTED BY THE APPLICABLE LAW AND FACTS OF THIS CASE. ................................................... 3

POINT III   THE MOVING DEFENDANTS' MOTION MUST BE GRANTED SINCE PLAINTIFFS HAVE ENTIRELY IGNORED THE SCIENTER REQUIREMENT OF A RULE 10(b) SECURITIES FRAUD CLAIM. ........................................................................... 10

POINT IV   PLAINTIFFS' EQUITABLE ESTOPPEL ARGUMENT DOES NOT DEFEAT THE MOVING DEFENDANTS' MOTION BECAUSE IT RELIES UPON A FIDUCIARY DUTY ON THE PART OF THE MOVING DEFENDANTS THAT DID NOT EXIST AND IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ........................... 12

CONCLUSION ............................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 *U.S.* 579 (1993) ................................................................................... 11

*Evvtex Co., Inc. v. Harley Cooper Associates Ltd.*,
    102 *F.3d* 1327 (2d Cir. 1996) ............................................................................ 9

*Fisher v. Aetna Life Ins. & Annuity Co.*,
    39 *F. Supp. 2d* 508 (M.D. Pa. 1998) ................................................................ 8, 9

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    2004 *WL* 3439 (S.D.N.Y.) ................................................................................ 9

*Komanoff v. Mabon, Nugent & Co.*,
    884 *F. Supp.* 848 (S.D.N.Y. 1995) ..................................................................... 14

*Kumho Tire Co. v. Carmichael*,
    119 *S.Ct.* 1167 (1999) ................................................................................... 11

*Malhotra v. Equitable Life Assurance Society of the United States*,
    364 *F. Supp. 2d* 299 (E.D.N.Y. 2005) .................................................................. 12

*Negron v. Llarena*,
    156 *N.J.* 296 (1998) ............................................................................... 14, 15

*Owens v. Aetna Life & Cas. Co.*,
    654 *F.2d* 218 (3d Cir. 1981) ............................................................................ 9

*Price v. New Jersey Manufacturers Insurance Company*,
    182 *N.J.* 519 (2005) ..................................................................................... 13

*Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermans Mut. Ins. Co.*,
    641 *F. Supp.* 297 (E.D. Pa. 1986) ...................................................................... 9

*Rochez Bros., Inc. v. Rhodes*,
    527 *F.2d* 880 (3d Cir. 1975) ............................................................................ 5

*Sharp v. Coopers & Lybrand*,
    649 *F.2d* 175 ............................................................................................. 5

*Simcuski v. Saeli*,

44 *NY2d* 422 (Ct. of Appeals, 1978) ..................................................... 13

*White v. Violent Crimes Compensation Bd.*,
    388 *A.2d* 206 (1978) ..................................................................... 14

*White v. Violent Crimes Compensation Board*,
    32 *Rutgers L.Rev.* 95 (1979) ......................................................... 14

**Federal Rules of Civil Procedure**

*R.* 9(b) ......................................................................................................... 8

*R.* 10(b) ..................................................................................................... 10

*R.* 12(b)(6) ............................................................................................. 1, 15

**United States Code**

15 U.S.C. § 78a *et seq.*, (Securities Exchange Act of 1934) .............................. 4

17 *C.F.R.* § 240.12b-2 ................................................................................... 5

## INTRODUCTION

In Plaintiffs' Memorandum of Law in opposition to Defendants MainStay Funds and New York Life Insurance Company's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the entirety of Plaintiffs' First Amended Complaint (the "Opposition Brief"), Plaintiffs wholly fail to explain or address the multiple fatal deficiencies of their First Amended Complaint (the "Complaint") against MainStay Funds and New York Life Insurance Company (collectively occasionally referred to as the "Moving Defendants"). First, Plaintiffs' reliance upon a series of estoppel cases arising in personal injury and/or medical malpractice is misplaced and does not address the Plaintiffs' failure to comply with the applicable statutes of limitations. Second, Plaintiffs have not even attempted to refute the Moving Defendants' position that the Moving Defendants never sold either of the Plaintiffs a life insurance policy. Accordingly, Plaintiffs cannot refute the Moving Defendants' position that Counts Seven, Eight, Nine, Ten, Twelve and Fifteen of the Complaint -- all of which are founded upon allegations concerning life insurance policies -- must be dismissed as against the Moving Defendants for failure to state a claim upon which relief can be granted.

In addition to Plaintiffs' failure to dispute core facts identified by the Moving Defendants in support of their motion to dismiss, Plaintiffs' Opposition Brief fails to provide any legal authority, whatsoever, in support of Plaintiffs' legal assertions that the Moving Defendants had and/or violated any duties owed to Plaintiffs. More specifically, Plaintiffs have failed to provide facts that support, and cannot

possibly establish, the existence of a relationship between either the Moving Defendants and alleged principal wrongdoer, David Gabay ("Gabay"), or between the Moving Defendants and the Plaintiffs, sufficient to impute liability for Gabay's alleged wrongful securities churning to the Moving Defendants in this securities fraud case. Finally, Plaintiffs are unable to establish any damages against the Moving Defendants in light of the fact that they suffered no loss of assets with respect to the Mainstay Convertible Funds Account held by plaintiff Alfred Peng. Since Plaintiffs have not raised any issue of fact or law sufficient to defeat the Moving Defendants' Motion, Plaintiffs' entire Complaint against the Moving Defendants must be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

## POINT I

### COUNTS SEVEN, EIGHT, NINE, TEN, TWELVE AND FIFTEEN OF PLAINTIFFS' COMPLAINT MUST ALL BE DISMISSED AS AGAINST THE MOVING DEFENDANTS BECAUSE THE MOVING DEFENDANTS DID NOT ISSUE A LIFE INSURANCE POLICY TO THE PLAINTIFFS.

As in Plaintiffs' Complaint, the Procedural History and Statement of Facts sections of Plaintiffs' Opposition Brief are mainly consumed with allegations concerning the issuance, value (or lack thereof) and lapsing of life insurance policies. *See* Complaint at Counts 7, 8, 9, 10, 12 and 15. Despite this, nowhere in their Opposition Brief do Plaintiffs deny or contest the Moving Defendants' assertion that neither of the Moving Defendants ever issued a life insurance policy to either of the Plaintiffs herein. Accordingly, Counts Seven, Eight, Nine, Ten, Twelve and Fifteen of the Complaint, all of which are founded upon alleged fraud

2

or misrepresentations concerning life insurance policies, must be dismissed as against the Moving Defendants, who never issued a life insurance policy to the Plaintiffs.[1]

### POINT II

### PLAINTIFFS' ASSERTION THAT AN AGENCY RELATIONSHIP EXISTS BETWEEN GABAY AND THE MOVING DEFENDANTS IS UNSUPPORTED BY THE APPLICABLE LAW AND FACTS OF THIS CASE.

As stated in the Moving Brief, it is overwhelmingly clear that the Plaintiffs' principal complaints concern the alleged actions and/or statements of Gabay -- Plaintiffs' own financial planner in whom they reportedly reposed great trust and confidence. *See* Complaint at ¶¶ 108, 18, 31, 36, 91; Opposition Brief at 6 (". . . Gabay began investing Plaintiffs' funds heavily in annuities with a promise of a 10% rate of return") (emphasis added). The theories of liability against the various remaining defendants are based upon an alleged control of, or responsibility for, the actions of Gabay -- the principal wrongdoer who allegedly engaged in the churning of various of Plaintiffs' securities and insurance accounts. There are simply no factual allegations whatsoever to support such liability against the Moving Defendants.

Plaintiffs' claim that Gabay was the Moving Defendants' agent is based purely on Gabay's sale of a MainStay Funds product to Plaintiffs. However,

---

[1.] As stated in the Declaration of Mark Newhart submitted by the Moving Defendants in support of the instant motion (the "Newhart Dec."), MainStay Funds is not an issuer of life insurance policies. *See* Newhart Dec. at ¶ 2. Hence, there is no possible way that MainStay could have issued a life insurance policy to Plaintiffs, or anyone else for that matter.

Plaintiffs wholly ignore the fact that they suffered no loss with respect to the single MainStay Convertible Funds Account held by plaintiff Alfred Peng and, in fact, incurred a gain in the sum of $5,077.04. See generally the Supplemental Declaration of Mark Newhart (the "Supp. Newhart Dec.") submitted herewith. In terms of factual allegations to purportedly support this position, Plaintiffs rely strictly upon the alleged appearance of Gabay's name on certain statements Plaintiffs allegedly received relative to their MainStay Funds account. Despite these sparse assertions, there was never an agency relationship between Gabay and MainStay and, moreover, MainStay never owed Plaintiffs a fiduciary duty of any kind.

Plaintiffs' claims against the Moving Defendants clearly sound in "control-person" liability for the actions of Gabay under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Notably, however, Plaintiffs have not directed Count One of their Complaint -- which purports to plead "control person" liability -- against the Moving Defendants. Even if they had, Plaintiffs fail to allege any facts that might support "control person" liability against the Moving Defendants, or support the existence of an agency relationship between Gabay and MainStay under any rules of agency.

Under the Exchange Act, a "controlling person" is liable "to the same extent" as the corporation or other "controlled person" who is liable to an injured party. All relevant circumstances are considered in deciding whether a defendant is a controlling person, and courts give "heavy consideration" to the potential power of

a person to influence and control the activities of another, as opposed to actual exercise of such power. *Rochez Bros., Inc. v. Rhodes*, 527 *F.2d* 880, 890-91 (3d Cir.1975). Some culpability on the part of the defendant is clearly necessary, and the plaintiff must show that the controlling person's conduct or inaction in failing to stop a securities violation was deliberate and done intentionally to further the violation. *Id.* (*citing Sharp v. Coopers & Lybrand*, 649 *F.2d* 175, 185 (3d Cir.1981), *cert. denied* 455 U.S. 938, (1982)). The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id., citing* 17 *C.F.R.* § 240.12b-2.

Neither Plaintiffs' Complaint nor Opposition Brief set forth any allegations that tend to support a finding that the Moving Defendants had any ability to control the day-to-day activities or dealings of Gabay in his capacity as Plaintiffs' financial planner. The fact that Gabay's name allegedly appeared on monthly statements received by Plaintiffs does not establish MainStay's "control" over Gabay as that term is understood in the securities law. The Moving Defendants never paid any commissions to Gabay. See the Supp. Newhart Dec. at ¶¶ 10-11. Rather, NYLife Distributors paid commissions only to the servicing dealer (here, Royal Alliance) who would, in turn, pay commissions to its agent (here, presumably, Gabay). *Id.*

The entirety of the relationship among the various Defendants is set forth in the Soliciting Dealer Agreement ("SDA"). Newhart Dec., Exhibit "A". In their opposition, Plaintiffs do not provide any proofs to support their assertions that

5

Gabay was an agent of the Moving Defendants. The unambiguous language of the SDA, which is only between NYLife Securities, Inc. and either Defendant Royal Alliance or Defendant Mutual Service Corporation ("Royal" or "MSC"), demonstrates the extremely limited nature of the relationship between the Moving Defendants and Defendants, Royal and MSC. Seemingly, it is Gabay's relationship with Royal that allowed him to purchase certain MainStay funds for Plaintiffs. Indeed, Gabay was never an agent of the Moving Defendants. Plaintiff's subjective beliefs cannot make it so. *See* Paragraphs 3 and 9 of the December 13, 2005 Affidavit of David Gabay submitted by Defendants Gabay and Mutual Service Corporation relative to their separately filed motion to compel arbitration.2 Nonetheless, it is without question that there was never privity of contract between the Moving Defendants and Gabay, or between the Moving Defendants and Plaintiffs. *See* Newhart Dec., Ex. "A" at ¶ 7. The SDA states, in relevant part, as follows:

> As principal, we [NYLife Securities, Inc.] hereby offer to sell Shares to you, acting as principal *and not as broker or agent for, or employee of, us or the Funds* . . . (Newhart Dec., Ex. "A", Introductory Paragraph) (emphasis added). . . .
>
> It is understood that *nothing in this Agreement, including the word "commissions", shall be construed to establish either of us as agent, partner, or employee of the other, no shall give you any authority to act as an agent for us.* Nor shall anything in this Agreement be construed to establish you or any Fund as an agent, partner, or employee of the other, and it is understood that you have no authority to act as an agent for the Fund. In all sales of the Shares to the

---

2   The Moving Defendants do not oppose the pending Motions to Compel Arbitration filed by defendants Mutual Service Corporation and David Gabay. In the event that the Court compels arbitration and at the Court's discretion, the Moving Defendants will consent to a stay of the within motion for such period as the Court may deem appropriate.

public, *you shall act as a dealer for you own account, and neither we, any of our affiliates and subsidiaries, nor any Fund shall be liable for any of your acts or obligations as a dealer* under this Agreement. . (Newhart Dec., Ex. "A" at ¶ 7) . . .

Neither you no any other person, including persons associated with you, is authorized or permitted to give any information nor make any representations concerning the Shares or the Funds other than those contained in the Prospectuses or any supplemental sales literature supplied by us or approved by us in writing in advance for use in connection therewith (except that sales material provided by us that is designated as being for broker-dealer use only many not be disseminated to the public). Any supplemental sales literature, if distributed, must be preceded or accompanied by the Fund's Prospectuses. You agree that any information given or representations made on the basis of the supplemental sales literature shall be consistent with the related information and representations contained in the Prospectus. (Newhart Dec., Ex. "A" at ¶ 16)

The SDA unequivocally demonstrates that neither Gabay, nor any of the other defendants, acted as the Moving Defendants' "agent" for purposes of the sale of MainStay Funds to Plaintiffs, or any other third party.

Plaintiffs claim that, even if Gabay was not actually an agent of the Moving Defendants, Plaintiffs reasonably believed him to be an agent. This self-serving assertion is equally incapable of rescuing Plaintiffs' doomed claims against the Moving Defendants. First, Plaintiffs' assertion is undermined by Plaintiffs' Complaint, itself, which alleges an agency relationship <u>only</u> between Defendant Gabay, and Defendant, Pinnacle Planning Group, and not between Gabay and the Moving Defendants. Further, Gabay has expressly stated that, during the relevant period, he "was a registered representative of Defendant Royal Alliance Assocatres, Inc." See the December 14, 2005 Affidavit of David L. Gabay filed in support of Defendants' Mutual Service Corporation and David L. Gabay's Motion to Compel

7

Arbitration at ¶ 3. *See* Complaint at ¶ 46. This allegation readily reveals Plaintiffs' keen understanding that Gabay was an agent of Pinnacle, and not an agent of the Moving Defendants. Contrary to their assertions in their Opposition Brief, Plaintiffs clearly did <u>not</u> believe that Gabay was an agent of New York Life Insurance Company or MainStay Funds. In any event, Plaintiffs' mere purported "belief" of Gabay's purported agency unquestionably fails to satisfy the stringent specificity pleading requirements imposed by the combined application of *Fed. R. Civ. P.* 9(b) and the Private Securities Litigation Reform Act (the "PSLRA") in the securities litigation context, an argument Plaintiffs entirely fail to address. *See* Moving Brief at Point III.

Even under a pure "agency" analysis, Plaintiffs set forth no factual allegations to support their charge that the Moving Defendants "held these sales agents [Gabay] out as having the authority to speak for and represent the company. . . ." *See* Opposition Brief at p. 11. Plaintiffs' reliance upon the Pennsylvania Unfair Trade Practices case of *Fisher v. Aetna Life Ins. & Annuity Co.*, 39 *F. Supp. 2d* 508, 514 (M.D. Pa. 1998), *aff'd*, 176 *F.3d* 472 (3d Cir. 1999), which concerned the purchase of life insurance policies through a trusted insurance broker, is absolutely unavailing to Plaintiffs for purposes of defeating this motion. *See* Opposition Brief at 10. In *Fisher*, the Federal District Court remonstrated that "[w]here a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which insurance company shall become the insurer, a long line of decisions has

declared the broker to be the agent of the insured; not of the insurer." *Fisher*, at 39 *F. Supp. 2d* 513. The Court further noted that, "[a]n insurance broker is not employed by any specific company and acts as a middle man between the insured and the insurance company." *Id.* (quoting *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.,* 641 *F. Supp.* 297, 303 (E.D.Pa. 1986)). The federal courts have applied similar holdings under both New Jersey and New York law. See *Owens v. Aetna Life & Cas. Co.*, 654 *F.2d* 218 (3d Cir. 1981); (under New Jersey law, an insurance broker acts for the insured for the purpose of making the application and procuring an insurance policy) and *Evvtex Co., Inc. v. Harley Cooper Associates Ltd.*, 102 *F.3d* 1327 (2d Cir. 1996); (Under New York law and common law, insurance brokers act as agents on behalf of the insured where they are employed by the insured to procure insurance.)

Just as the *Fisher* plaintiffs turned to their old friend/broker for advice in purchasing insurance, the Plaintiffs herein turned to David Gabay after ten years of working with and trusting Gabay's mother, Sonia Gabay, for advice on their insurance and securities purchases. See Complaint at ¶¶ 16-17, 18 and 44. Application of *Fisher* to the facts of this case places Gabay in the place of the insurance broker -- Butz -- in the *Fisher* case. Hence, defendant Gabay would be deemed an agent of the insured, not the insurer. *See Highlands Ins. Co. v. PRG Brokerage, Inc.,* 2004 *WL* 3439 (S.D.N.Y.) at 5-6. Fisher, hence, supports the Moving Defendants' position in this case. Nor is this a case where MainStay Funds provided Gabay with ownership in the MainStay entity, or employment perks in

9

exchange for his sale of a MainStay product. Accordingly, this case is highly distinguishable from the other "dual agency" cases cited in Plaintiffs' Opposition Brief and Plaintiffs' vague assertion that Gabay acted as an "intermediary" and a "dual agent" is simply unsupportable by the facts alleged herein.

There is no question that Plaintiffs cannot establish entitlement to relief under any set of facts that could be proven consistent with their allegations. Accordingly, their Complaint must be dismissed as against the Moving Defendants for failure to state a claim upon which relief can be granted. *See* Moving Brief at Points III – V, pp. 15-24.

## POINT III

### THE MOVING DEFENDANTS' MOTION MUST BE GRANTED SINCE PLAINTIFFS HAVE ENTIRELY IGNORED THE SCIENTER REQUIREMENT OF A RULE 10(b) SECURITIES FRAUD CLAIM.

As the Moving Defendants pointed out in their moving papers, Plaintiffs' Complaint fails to allege any fact(s) that might arguably sustain a finding of scienter on the part of the Moving Defendants -- a requirement for a Rule 10b-5 Claim. Both Plaintiffs' Opposition Brief, and the Certification of the Pengs' new certified financial planner, Pai-Su Kang (the "Kang Cert.") -- upon which Plaintiffs heavily rely in their Opposition Brief -- entirely ignore both the scienter requirement of a Rule 10b-5 claim, along with the heightened pleading requirements imposed by the PSLRA. *See* Moving Brief at 15-21.

Noteworthy is that Ms. Kang does not state that she has been retained as an expert witness or consultant in this matter. Ms. Kang's certification is seemingly

10

submitted in her capacity as a fact witness. Notwithstanding, her certification contains numerous conclusory statements of fact that do not appear to be within the realm of Ms. Pang's personal knowledge, as well as statements about the purported legal obligations and duties on the part of the Moving Defendants, all of which are lacking in terms of foundation and legal support. Ms. Pang's statements are admittedly based upon "limited information". *See* Kang Cert. at ¶ 5. Accordingly, Ms. Kang's testimony would be impermissible under *F.R.E.* 602. *See* Kang Cert., at ¶¶ 5, 6, and 9-27. Moreover, Kang's statements are neither based upon sufficient facts or data, nor a product of reliable principles and methods as applied to the facts of this matter. See *F.R.E.* 702. Plaintiffs make no showing that the reasoning set forth in her testimony is of the type reasonably relied upon by experts in the field of financial planning. See *F.R.E.* 703. For example, Kang, apparently, is not a forensic accountant and provides no documents to support her statements, yet she broadly concludes that "plaintiffs losses were not the result of market conditions." Thus, in performing its "gatekeeping" function, it appears highly unlikely that the Court would permit Ms. Kang's testimony at a trial in this matter. *See generally, Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 *U.S.* 579 (1993) and *Kumho Tire Co. v. Carmichael* 119 *S.Ct.* 1167 (1999). Moreover, while Plaintiffs' Opposition Brief quotes and/or cross-references Pang's assertions about legal duties and obligations on the part of the Moving Defendants, and other defendants, the Opposition Brief cites no legal support, whatsoever, for Kang's

statements about the Moving Defendants' purported responsibilities to protect Plaintiffs.

Plaintiffs and Ms. Kang assert that the Moving Defendants should have known about Gabay's alleged churning. They make no factual assertions, however, that could even arguably support a claim that the Moving Defendants knew that any securities transaction(s) were unsuitable for Plaintiffs and, nonetheless, encouraged the transactions. Moreover, this allegation is obviously contradicted by the fact that Plaintiff Alfred Peng realized a gain of $5,077.04 upon surrendering the MainStay Funds account. See generally the Supp. Newhart Dec. Allegations that a defendant knew or should have known about an alleged fraud simply do not satisfy the Act's Section 10b-5 securities fraud standards. *See* Moving Brief at p. 16. *See also, generally, Malhotra v. Equitable Life Assurance Society*, 364 *F. Supp.* 2d. 299 (E.D.N.Y. 2005). In choosing to ignore this key legal principle, and all other elements of churning and unsuitable trading claims under Rule 10b-5, Plaintiffs have failed to put forth any basis for a denial of the Moving Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

## POINT IV

**PLAINTIFFS' EQUITABLE ESTOPPEL ARGUMENT DOES NOT DEFEAT THE MOVING DEFENDANTS' MOTION BECAUSE IT RELIES UPON A FIDUCIARY DUTY ON THE PART OF THE MOVING DEFENDANTS THAT DID NOT EXIST AND IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Plaintiffs counter the Moving Defendants' position that their claims are barred by the statutes of limitations with an equitable estoppel argument. *See* Opposition Brief at 15-17. However, Plaintiffs' estoppel theory relies upon the existence of a fiduciary relationship between Plaintiffs and the Moving Defendants, which is not alleged in Plaintiffs' Complaint and never existed between them. *See* Moving Brief at Point II, A., pp. 25-26.

Also, Plaintiffs maintain that they did not discover the purported actions for which they deem the Moving Defendants liable until their retention of Ms. Kang as a financial planner in 2004. Plaintiffs argue that their purported lack of knowledge is sufficient to toll the statute of limitations. *See* Moving Brief at Point II, pp. 9-15 (for discussion of the applicable statute of limitations scheme). By Plaintiffs' own arguments as set forth in their moving brief, the medical malpractice case of *Simcuski v. Saeli*, 44 *NY2d* 422 (Ct. of Appeals, 1978), cited by Plaintiffs' is inapposite. *See* pp. 13-14 of Plaintiffs' Opposition Brief. *Price v. New Jersey Manufacturers Insurance Company*, 182 *N.J.* 519 (2005), another case cited by Plaintiffs, is also distinguishable from the case at bar. In *Price*, a plaintiff was taken by surprise when his insurer contested an uninsured motorists claim after the expiration of the statute of limitation, and after having relied upon his insurer's failure throughout the applicable limitations period to identify irregularities in the manner in which plaintiff had asserted and filed the claim. First, the law applicable to *Price* (the N.J. Uninsured Motorist statute) is inapplicable to Plaintiffs' securities fraud claims in this matter. Second, despite Plaintiffs' claims to the contrary,

Plaintiffs approached Gabay with concerns about Gabay's financial management and made inquiries of Gabay, who insisted that they not "worry about it," much earlier on than they now wish to concede.[3]

In the case of *Negron v. Llarena*, 156 *N.J.* 296 (1998), the New Jersey Supreme Court held that a widow of an accident victim had substantially complied with the New Jersey Wrongful Death Act's statute of limitations under circumstances wherein she had filed a complaint in federal court within the limitation period, the federal case was dismissed without prejudice over three years later for lack of diversity jurisdiction and plaintiff immediately filed a complaint in state court. The Supreme Court drew an important distinction between procedural statutes of limitations, which bar the remedy and not the right, and substantive statutes of limitations, which bar both the remedy and the right itself. *Id.* at 300. On this issue, the *Negron* court stated that "substantive statutes of limitations are traditionally applied strictly." *Id.* at 301. The Supreme Court also explained that:

> A substantive statute of limitations can be distinguished from an ordinary or "procedural" statute of limitations. White v. Violent Crimes Compensation Bd., 76 N.J. 368, 374, 388 A.2d 206 (1978). Procedural statutes of limitations govern general causes of action, such as torts and contracts. See Marian Joyce, Note, Tolling of Substantive Statutes of Limitation- White v. Violent Crimes Compensation Board, 32 Rutgers L.Rev. 95, 95 (1979). The running of a procedural statute of limitations bars only the remedy, not the

---

[3] Plaintiffs have also notably failed to address the legal principle, set forth in the Moving Defendants Moving Brief, that a plaintiff's business sophistication is irrelevant to a statute of limitations inquiry in a securities fraud matter such as this. *See* Moving Brief at 11 (*citing Komanoff v. Mabon, Nugent & Co.,* 884 *F. Supp.* 848, 854 at n. 3 (S.D.N.Y. 1995)). Rather, they continue to discuss their alleged lack of sophistication concerning securities and investments, an irrelevant point for purposes of the applicable statute of limitations analysis. Simply put, nothing in the Opposition Brief belies the fact that Plaintiffs had a reasonable basis for concern, long before 2004, that Gabay's financial advice might not be sound, and, in fact, might be fraudulent.

right. Ibid. In contrast, substantive statutes of limitations restrict statutory causes of action that did not exist at common law. Ibid. A substantive statute of limitations, as a condition precedent to bringing suit, bars not only the remedy, but also the right itself. 22A Am.Jur.2d Death at §§ 57, 76 (1988).

*Negron,* 156 *N.J.* at 300.

In the case at bar, the Exchange Act creates the very right, or cause of action, invoked by Plaintiffs. Thus, the applicable statute of limitations is substantive, and not procedural, and, accordingly, is strictly applied. Additionally, even under a *Negron* analysis, Plaintiffs' failure to file their Complaint within the period set forth in the Exchange Act extinguished both Plaintiffs' right and their remedy. Hence, the Moving Defendants' motion to dismiss on grounds of non-compliance with applicable statutes of limitations must be granted.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs fail to overcome and/or refute the factual and legal arguments raised in the Moving Defendants' Motion to Dismiss. Therefore, Defendant MainStay Funds and New York Life Insurance Co.'s Motion to Dismiss Plaintiffs' Complaint under *Fed. R. Civ. P.* 12(b)(6) for failure to state a claim should be granted.

                              Respectfully submitted,
                              ADORNO & YOSS LLP
                              *Attorney for New York Life Insurance Company and MainStay Funds*

               By:    *s/N. Noelle Letcher*
                          N. Noelle Letcher (NNL 0965)